BALLIN v. FOURTEENTH STREET STORE.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

SALES—ACTIONS FOR PRICE—DEFENSES.

Where a purchaser, on being informed by its purchasing agent of a seller's proposition to him to pay him a commission on goods sold to the purchaser in violation of Pen. Code, § 384r, directed the purchasing agent to buy goods of the seller and see what the seller would do to make a test case, and thereafter made a purchase with knowledge that the seller had offered a commission thereon, the purchaser was liable for the price, notwithstanding such agreement for commission and payment of the same.

Appeal from Trial Term, Kings County.

Action by Solomon Ballin against the Fourteenth Street Store. Judgment for plaintiff (105 N. Y. Supp. 1028), and defendant appeals. Modified and affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Arthur W. Weil (Benjamin G. Paskus, on the brief), for appellant. Sydney W. Stern, for respondent.

HOOKER, J. This is an action for goods sold and delivered by the plaintiff to the defendant. The plaintiff had the judgment, and the defendant appeals. The defendant claims that the plaintiff is not entitled to recover in any event or under any circumstances, because his conduct leading up to the delivery of the goods was dishonest, fraudulent, and against public policy. The facts are somewhat unusual, and reflect one phase of an unfortunate condition which is all too prevalent in the business world, namely, the bribing by wholesale dealers of purchasing agents of prospective customers. The material facts are that the plaintiff had shirts to sell and the defendant was a large department store. McGuinness was buyer and purchasing agent for the defendant, and on December 8, 1906, received a letter from the plaintiff calling his attention to the fact that he had been unable to do business with the defendant through his regular salesman, and offering to pay him 5 per cent. if he would place the defendant's orders with the plaintiff. He stated that if he had any compunction about doing so he would allow the 5 per cent. to the defendant in the form of an extra trade discount. McGuinness took the letter at once to Goldman, the secretary of the defendant, "who was authorized to act on behalf of the defendant in connection with the matters involved in this suit," and Goldman told McGuinness:

"Go down and see these people, and make some purchases, and see what they will do. We want to make a test case of this."

McGuinness called on the plaintiff, bought a bill of goods amounting to a little over $1,000, and was allowed 6 per cent., instead of 5 per cent., by the plaintiff. The extra 1 per cent. was figured in this way: McGuinness agreed to buy on terms of 2 per cent. off in 10 days, instead of 2—10—60; it being agreed that the waiver by the defendant of the extra 60 days' credit was equivalent to 1 per cent. After the talk between McGuinness and the plaintiff, McGuinness told Goldman, the defendant's secretary, what had occurred between him and the plaintiff. Thereafter the defendant ordered its goods, and the plaintiff paid McGuinness $61.50, being equal to 6 per cent. of the face of the order. Subsequently the plaintiff was arrested for violation of section 384r of the Penal Code, which prohibits bribing purchasing agents, pleaded guilty, and was fined $50, which he paid. The defendant has never paid anything on account of the purchase price of the goods sold and delivered to it, and has kept the goods and not offered to return them.

The appellant submits a very strong brief, in which the court is asked to hold that one who resorts to such means as were employed by the plaintiff in this action should be denied the right of recovering the fair value of the goods sold and delivered, even where the goods are retained by the defendant and used or consumed. This would be very drastic; but yet, on the other hand, the condition is such that the courts should go as far as the body of the law will permit toward stamping out this practice. A careful examination of the authorities reveals that much can be said for the appellant's contention. This is the principal fault with it, however: It claims that the plaintiff's conduct is against public policy. That may or may not be so, as a matter

of law. Certain it is that such conduct is unprincipled, bad in morals. and in ethics, and downright dishonest; but the contract itself, which is merely a contract for the sale of goods, wares, and merchandise at a. given price, is not and cannot be against public policy, for the merchandise was shirts. The plaintiff sought to perpetrate a fraud, using the term "fraud" in its looser sense; but, in general, cases of this sort do not accomplish a legal fraud against the purchaser, for the purchaser would pay the same price, whether its purchasing agent received a commission or not.

However, we do not think that the record before us discloses a proper case for the decision of this question of law; for in this case the defendant was not defrauded in any way. It was not misled, nor was it in ignorance of the plan which the plaintiff proposed to adopt. On the other hand, it was advised of plaintiff's proposition before McGuinness had accepted it, and upon the defendant's suggestion and solicitation the agreement between the plaintiff and McGuinness was made. Then, again, the result of the talk between the plaintiff and McGuinness and the private arrangements which had been made between them was fully revealed to the defendant before the order for the goods was given to the plaintiff; and hence there was nothing concealed from it. Under the circumstances there was, of course, nothing of legal fraud in the contract, and the defendant was not only consenting that its purchasing agent receive a commission from the plaintiff, but was even urging him to procure it if he could. Under these circumstances, it seems too plain for argument that the defendant must pay for the shirts it bought.

Our conclusion is that, inasmuch as the defendant knew of the plaintiff's proposition to its purchasing agent, directed him to buy goods of the plaintiff, and see what the plaintiff would do, and afterwards made a purchase with full and complete knowledge of the plaintiff's offer to pay the purchasing agent a commission, the defendant must be held to have assented to the agreement between the plaintiff and its purchasing agent, and to have bought the bill of goods and impliedly agreed to pay for them, even though its purchasing agent was to receive a commission or gratuity from the plaintiff.

The judgment should be modified, by striking out the provision for an extra allowance, and, as so modified, affirmed, without costs. All concur.