Voechting and others vs. Grau and another.

*August 29 — September 19, 1882.*

COUNTERCLAIM. *(1) Object of rule that counterclaim must be so denominated. (2) Waiver.*
CAUSE OF ACTION: CONTRACT. *(3) Breach of contract for exclusive right of sale. Termination of contract.*
FORECLOSURE OF MORTGAGE. *(5) What is "reasonable" attorney's fee, to be ascertained by evidence.*

1. The object of the rule that a counterclaim must be pleaded as such and be so denominated *(Stowell v. Eldred,* 39 Wis., 614; R. S., sec. 2656), is to prescribe an uniform test for ascertaining whether mat-

ters stated in an answer constitute a counterclaim or are a defense merely, thus giving the plaintiff a safe guide for his future pleadings or proceedings.

2. If the plaintiff treats the answer as a counterclaim by demurring to it as such, and, after the demurrer is overruled, by interposing a reply, he thereby waives his right to object that it does not contain a counterclaim, because the matters alleged therein are not so denominated. *Selleck v. Griswold*, 49 Wis., 39.

3. In an action to foreclose a mortgage given to secure the payment of sums to become due on a contract for the sale of a certain kind of beer to the defendants, a counterclaim stating that by the contract the defendants were to have the exclusive control and sale of such beer in certain territory, and that they had expended large sums of money in establishing the business of selling the beer there, and alleging a breach of the contract in that particular by the plaintiffs, is *held* to state facts sufficient to constitute a cause of action. If no time was specified for the continuance of such exclusive right of sale, the contract is binding in that respect until terminated by one party upon reasonable notice to the other.

[4. What would be the rule of damages for such a breach of contract is not here determined.]

5. Where a mortgage contains a stipulation that in case of foreclosure the mortgagor will pay, " in addition to the taxable costs, . . . a reasonable and customary sum for attorney's or solicitor's fees," the amount to be allowed for such fees must be ascertained by evidence; and it is not competent for the judge to fix the amount on a mere inspection of the record, or from his personal knowledge of the services rendered.

APPEAL from the Circuit Court for *Milwaukee* County.

When the alleged cause of action arose, the plaintiffs were copartners, engaged at the city of Milwaukee in the business of bottling and selling lager beer, manufactured by the Joseph Schlitz Brewing Company of that city, and the defendants had entered into a copartnership for the purpose of carrying on the liquor business in Dakota. The firm established itself at Fargo. On or before the 2d of April, 1879, an arrangement was made by the defendants to purchase for their Dakota trade of the plaintiffs such bottled beer, on credit. To secure the plaintiffs for any sums in which the defendants might become indebted to them on account of

such purchases (not exceeding $2,000), the defendant *Grau* executed to the plaintiffs a mortgage on certain real estate in the city of Milwaukee. The plaintiffs delivered a car load of beer to the defendants under this contract, for which the defendants have not paid. This is an action to foreclose such mortgage.

The defendants answered that the beer was not of the quality called for by the contract, but was of inferior quality and of little value. Also that the contract was that the defendants should have the exclusive control and sale of said beer along the line of the Northern Pacific Railroad throughout the whole northern part of the territory of Dakota. The answer further alleges that while the defendants were making arrangements for the sale of such beer along the line of said railroad in Dakota, and after they had expended considerable sums of money to that end, the plaintiffs, without any notice to the defendants, sold and shipped their beer to various other parties at Bismarck and other places on the line of said railroad in Dakota for sale, the effect of which was to prevent the defendants from establishing agencies for the sale of such beer at those places. Judgment is demanded for the damages caused by the alleged breaches of the contract in the above particulars, and that the mortgage sought to be foreclosed be canceled and surrendered.

The answer does not expressly state that the foregoing matters are pleaded as a counterclaim. However, the plaintiffs interposed a general demurrer to it as a counterclaim. The demurrer having been overruled, the plaintiffs filed a reply denying every material allegation in the answer constituting a counterclaim. On the trial, after the plaintiffs had proved a *prima facie* case and rested, the defendants gave testimony tending to prove that the plaintiffs contracted to give them the exclusive right to sell their beer in the territory specified in their answer. They then gave testimony tending to prove the breach of the contract in that

particular by the plaintiffs. Upon conflicting testimony the court found that the beer delivered to the defendants was of the kind and quality called for by the contract. All evidence of damages resulting from the alleged breach of the contract in respect to the alleged exclusive right to sell the beer in the specified territory was excluded by the court. The answer contains several averments of damages in that behalf. The court found that the defendants were indebted to the plaintiffs for the car load of beer delivered at the contract price, and gave judgment of foreclosure accordingly. The defendants appealed from the judgment.

For the appellants there was a brief by *Goodwin & Benedict*, and oral argument by *Mr. Goodwin*.

For the respondents there were briefs by *E. P. Smith* and *Nath. Pereles & Sons*, and oral argument by *Mr. Smith*.

LYON, J.   The answer contains allegations of (1) a breach of warranty on the sale of the beer; and (2) a breach of the alleged contract by the plaintiffs giving the defendants the exclusive right to sell the beer in the specified territory. The issue as to whether there was any such breach of warranty was tried, and on sufficient evidence (we think) was found for the plaintiffs. The evidence on the other issue was received and is conflicting, but there is no finding on that issue. All testimony offered by the defendants tending to show the damages they sustained by reason of the alleged violation of their agreement to give the defendants such exclusive right of sale, was rejected by the court. The principal question in the case is, was it error to reject that testimony? It is objected that the matters alleged in the answer are not pleaded as counterclaims because they are not so denominated in the pleading, as required by the rule of this court laid down in *Stowell v. Eldred*, 39 Wis., 614, and re-asserted in the subsequent cases of *Fuchs v. Treat*, 41 Wis., 404, and *Dobbs v. Kellogg*, 53 Wis.; 448, and perhaps

in other cases.   The rule is now a statutory provision.
R. S., 726, sec. 2656.

The object of this rule, as stated in *Stowell v. Eldred*, was
to prescribe a uniform test for ascertaining whether matters
stated in an answer constitute a counterclaim upon which
affirmative relief might be granted, or are merely a defense
to the action.   This was necessary because of the frequency
of cases in which the court was called upon to determine
whether or not answers contained counterclaims.   Hence
defendants are required by the rule, in addition to their de-
mand for affirmative relief, to denominate their pleadings as
counterclaims, if they rely upon them as such.   The rule
was made to promote and does promote accuracy in plead-
ings.   It may easily be complied with, and should not be dis-
turbed.   The purpose and effect of it is to inform the plaintiff,
unmistakably, whether the answer contains a counterclaim,
or is a defense only, thus giving him a safe guide for deter-
mining his future pleadings or proceedings in the action.   But
the reason of the rule fails in a case in which, as in this case,
the plaintiffs treat the answer as a counterclaim, by demur-
ring thereto as such, and after the demurrer is overruled by
interposing a reply to it as a counterclaim.   By these pro-
ceedings the plaintiffs denominate the pleading a counter-
claim, and thus supply the omission of the defendants to
do so.   We hold, therefore, that the plaintiffs have waived
the right to object that the answer does not contain a
counterclaim, because the matters alleged are not therein so
denominated.

In *Selleck v. Griswold*, 49 Wis., 39, it was held that
" where an answer sets out facts sufficient to constitute a
counterclaim, and demands a positive judgment thereon
against the plaintiff, and a reply is made thereto, and the
issue tried without objection, it is too late to object here on
appeal that such pleading of defendant was not therein
*named* a counterclaim."   It is no extension of the principle

of that ruling to hold, as we now do, that after reply in such a case it is too late to object, even on the trial, that the pleading replied to is not a counterclaim merely because it is not therein so denominated. Having thus reached the conclusion that the breaches of the contract for the purchase and sale of the beer, alleged in the answer, must be taken to be pleaded as a counterclaim, it only remains to inquire whether the counterclaim states facts constituting a cause of action in favor of the defendants against the plaintiffs. This inquiry is limited to the alleged breach of the contract in respect to the defendants' exclusive right to sell the beer in the territory specified, for the reason that the issue concerning the alleged breach of warranty was litigated on the trial and found against the defendants.

We think the answer states a cause of action in this particular. It alleges the contract to have been "that the defendants should have the exclusive control and sale of said beer" in certain specified territory; the expenditure of large sums of money in and about establishing their business of selling the same at various points therein, particularly at Bismarck; the sale of their beer by the plaintiffs to other parties (without notice to the defendants) to be sold at Bismarck and other places within the specified territory; and that the plaintiffs assumed to give such other parties the exclusive right to sell the same in those places. If no time was specified for the continuance of such exclusive right of the defendants to sell the plaintiffs' beer, we suppose either party might terminate that portion of the contract at any time on reasonable notice to the other party. *Irish v. Dean,* 39 Wis., 562. But until so terminated, no good reason is perceived why the contract is not valid and binding upon the plaintiffs until rescinded, and why the defendants are not entitled to recover as damages at least their necessary expenses incurred in good faith in making arrangements to establish the business of selling such beer at Bismarck and other points, if the

business was destroyed or injured by the acts of the plaintiffs in violation of their contract. The rule of damages for such a breach of the contract has not been argued, and will not be determined on this appeal. It is sufficient to say that we are of the opinion that the answer states facts which entitled the defendants to prove the contract, and the breach of it, by the plaintiffs, together with such damages resulting therefrom as the law gives. They were allowed to introduce testimony tending to show the contract and breach, but all evidence of the resulting damages was excluded. We think this was erroneous. Had the court found that no such exclusive right of sale was contracted for, the error would be immaterial. But there is no finding on that issue, and we cannot know that it would not have been for the defendants had there been a finding. Because there is no finding on that issue (the testimony bearing upon it being in conflict), and because testimony tending to prove the damages resulting from the alleged breach was rejected, there must be another trial.

We think the record discloses another error. The mortgage in suit contains a stipulation that in case of its foreclosure the mortgagor will pay, "in addition to the taxable costs in the foreclosure suit, a reasonable and customary sum for attorney's or solicitor's fees." The court allowed $75, without any proof of the value of the attorney's services. While it was competent for the court to allow a sum for solicitor's fees, under this stipulation, the amount to be allowed should be ascertained by evidence, like any other material fact in the case, and it is not competent for the judge to fix the amount to be allowed on a mere inspection of the record, or from his personal knowledge of the services rendered.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial